[No. 3769. Decided July 1, 1901.]

THE STATE OF WASHINGTON, *Respondent*, v. L. PARKER, *Appellant*.

CRIMINAL LAW — SEPARATION OF JURY — CONSENT OF ACCUSED.

Under Bal. Code, § 6947, which provides that "juries in crim-inal cases shall not be allowed to separate, except by consent of the defendant and the prosecuting attorney," it is reversible error for the court to ask defendant, in the presence of the jury, after the trial had proceeded two days without separation, and the case was almost ready to submit, if he would consent to one of the jurors returning home because of the sickness of his child, to which separation defendant was thus compelled to con-sent, for fear of prejudicing his case in the mind of said juror.

SAME — MISCONDUCT OF JURY.

A juror who has testified on his *voir dire* examination that he did not know defendant, and that he could fairly and impartially try the case, free from bias, is guilty of such misconduct as to entitle defendant to a new trial, where, after retirement to the jury room, he makes statements to his fellow-jurors of facts not in evidence against defendant, and asserts his belief in his guilt because he knew him to be a member of a gang of toughs.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Reversed.

*Silas M. Shipley* and *Morris & Southard,* for appellant.

*Walter S. Fulton,* Prosecuting Attorney (*John B. Hart,* of counsel), for the State.

The opinion of the court was delivered by

HADLEY, J.—This cause is a prosecution by the state of Washington against the appellant on a charge of grand larceny. The cause was submitted to a jury and a verdict of guilty as charged returned. A motion for a new trial was overruled, and appellant was sentenced to serve a term of ten years in the penitentiary, from which judgment he has appealed to this court.

It is assigned as error that the court permitted the jury to separate during the trial. The appellant's affidavit in support of the motion for new trial states the following:

"Affiant further says that during the trial of said cause, after the testimony was all in and the argument partially completed, at the hour of adjournment of court, about 5 o'clock p. m. of May 18, 1900, one of the jurors before whom the said cause was being tried, stated to the court that his daughter was very sick at his home in Renton, about twelve miles distant from Seattle, and asked permission to go home to see her; that the court, in the presence of said juror, after stating the above facts to this affiant who was then upon trial, and in the hearing of said juror,

asked this affiant and defendant herein if he had any ob-
jection to the granting of said juror's request, and that
this affiant, through fear of prejudicing said juror against
himself, stated in reply thereto that he did not object pro-
vided his attorneys would not; and further suggested that
some officer go with said juror; that subsequently, on the
statement being made to affiant by his attorneys that he
would prejudice said juror by insisting on an officer ac-
companying him, affiant consented in open court to the re-
quest of said juror, who was subsequently permitted to sep-
arate himself from the rest of the jury, and was given a
leave of absence until the hour of 2 p. m. of May 19, 1900;
that said juror subsequently separated himself from said
jury, and remained separate and apart from the balance
of the jury during said period, and was not during said
time in the custody of any officer of the court; and that
said juror subsequently united in the verdict to convict
this affiant. Affiant says that his consent to the separa-
tion of said jury was not freely and voluntarily given, by
reason of the manner in which he was induced to grant the
same, and that affiant was prejudiced thereby."

Section 6947, Bal. Code, provides as follows:

"Juries in criminal cases shall not be allowed to sepa-
rate, except by consent of the defendant and the prosecut-
ing attorney, but shall be kept together, without meat or
drink, unless otherwise ordered by the court, to be fur-
nished at the expense of the county."

It appears from the record that, prior to the time the
request mentioned in the above affidavit was made by the
juror, the jury had not separated. At the time of each
adjournment of the court during the progress of the trial
the jury were placed in the charge of sworn officers, and
when the request of the one juror was granted, the re-
maining jurors were still kept together and in charge of
officers. The conditions presented are somewhat anoma-
lous. It is a common practice of trial courts to permit
juries in ordinary criminal cases to separate at all inter-

missions of the court during the progress of the trial, when the defendant and prosecuting attorney have consented to such separation; but this course is usually adopted at the beginning of the trial, or at the first adjournment of the court thereafter, and therefore becomes the established rule of the trial. In this case the rule of keeping the jury together was pursued, and when the trial had continued for two days, and after all the evidence had been submitted to the jury, and while the argument of counsel was progressing, the request for the separation was made and the one juror was permitted to withdraw from the presence of the remainder of the jury from 5 o'clock p. m. of one day until 2 o'clock p. m. of the following day. The circumstances at the time the juror made his request and the granting thereof by the court, as set forth in appellant's affidavit, are not denied in the record. The state filed no counter affidavits. The appellant states in his affidavit that he consented in open court that the juror's request be granted, but suggested that an officer go with him. Subsequently, on the statement of his counsel that he would prejudice the juror against him by insisting upon the attendance of an officer, he gave his consent. The appellant was placed in a very trying position before the jury, and one which we believe should not have been forced upon him at that stage of the trial, particularly in view of the fact that no separation of the jury had theretofore occurred. The embarrassing situation might have been relieved by a private consultation between the court, the prosecuting attorney, and appellant and his counsel. Or the jury might have been asked to retire for a short time pending the consideration of the matter. If, then, free consent to the separation had not been given, the jury would have simply been informed that for legal reasons the request of the juror could not be granted, and thereby

no prejudice could have arisen in the mind of the juror against either party. For humane reasons, and in order to relieve any apprehension in the mind of the juror concerning his sick daughter, an officer might have been sent to make inquiry, if consent to the separation had not been freely and voluntarily given. Undoubtedly the consent contemplated by the statute must be free and voluntary, and not such as may be said to be forced from a defendant or from the state by reason of circumstances occurring in the presence of the jury.

In *State v. Holedger,* 15 Wash. 443, 448 (46 Pac. 652), this court said:

"The appellant complains in his ninth assignment that the court erred in asking counsel for appellant, in the presence and hearing of the jury if they had any objection to the separation of the jury. In the absence of any proof to the effect that the appellant was prejudiced in any way by the action of the court, we do not feel like reversing a case on this ground alone; but we desire to take occasion to say that considering the difficulty of making such a showing of injury by the party who claims to be aggrieved, we think it is a practice which should not be indulged in by trial courts, because, as appellant complains, if they did entertain any objection to the separation of the jury they were called upon to so state in the presence of the jury, and would thereby run the risk of incurring the displeasure of some juror. The court could very easily call counsel to him and ascertain privately and without the knowledge of the jury whether there were any objections to their separation."

The court refused to reverse the judgment in the above case, but sounded a significant note of warning to trial courts not to indulge the practice which was adopted in that case. If the case at bar stood upon an equality with the former case, we should doubtless decline to reverse it under this assignment of error, notwithstanding the admonition given in the former case. But here the trial had

proceeded for two days without a separation of the jury, and when the case was almost ready to submit to the jury the appellant was required to say, in the presence of the juror who was asking a personal favor, whether he was willing to grant it or not. The jury could not legally separate without the consent of the appellant, and we believe from the showing here that he did not voluntarily consent, within the meaning of the statute, and we therefore think the court erred in this particular.

It is also assigned as error that the court erred in refusing to grant a new trial because of misconduct of the jury. In support of this branch of the motion for a new trial the affidavits of two jurors were filed. The affidavit of one Hutton, among other things, states that a juror by the name of Hempy made the following statements to the jury during the consideration of the case in the jury room, to-wit:

"That he knew Parker was equally guilty with Collins, because they were both members of a gang of toughs who had, prior to the date of the crime alleged herein, occupied a shack in Kent, Washington; that a man had been murdered in the shack, and Parker and Collins had been implicated in the killing; that the juror Hempy recognized Parker and Collins as members of the gang, as he saw them in Kent himself."

There is another affidavit in the record made by one Jacobs, a juror, which contains alleged statements made to him by the juror Hempy after the rendition of the verdict, as to what Hempy had said to certain jurors during the consideration of the case in the jury room. The statements in this affidavit alleged to have been made by Hempy to the jurors are even stronger than those in the Hutton affidavit, but as the facts are not stated as being within the personal knowledge of Jacobs, but only as stated to him by Hempy after the verdict, we do not attach to them the

same weight that we do to the facts stated by the juror Hutton, which occurred in his immediate presence. These affidavits are not denied in the record. They contain further statements as to the effect which the juror's remarks had upon the verdict of the affiants, but such portions of the affidavits cannot be considered because of the well-known rule that a juror cannot be heard to impeach his own verdict. The statements in the affidavit of Hutton, as above set forth, bear directly upon the question of misconduct of a juror. Upon the *voir dire* examination the juror Hempy testified as follows:

"Q.  Where do you live, Mr. Hempv?
A.  At Kent.
Q.  How long have you lived in this county?
A.  Six years and a little over.
Q.  Are you acquainted with the defendant, Lawrence Parker?
A.  No, sir.
Q.  Do you know John Collins, the other defendant?
A.  No, sir.

Q.  Have you heard of this case or these defendants?
A.  No, sir.
Q.  Have you talked about the stealing of this money from the First National Bank with anybody?
A.  No, sir; but I have heard it spoken of at the time.
Q.·  You heard of it at the time?
A.  Yes, sir.
Q.  Did the persons who spoke of it, or that told you of it, were they persons who seemed to know the facts?
A.  Not that I know of.
Q.  Did what you heard cause you to form any opinion as to the guilt or innocence of the defendants?
A.  No, sir.
Q.  Have you any now, at the present time?
A.  No, sir.

CROSS-EXAMINATION.

Q. Did you say that you had never read the newspapers about this case, this alleged bank robbery?

A. No, sir.

Q. When did you first hear of it?

A. About the time that the crime was committed.

Q. How did you come to hear of it?

A. By men speaking about it in Kent.

Q. In Kent, you say?

A. Yes, sir.

Q. Did the parties who mentioned the case purport to know the facts?

A. Not that I know of.

Q. Were they residents of Kent that were discussing it?

A. Yes, sir.

Q. At that time, or any subsequent time, have you heard anything or learned anything about the case that would cause you to form any opinion as to the guilt or innocence of the defendants?

A. No, sir.

Q. You feel satisfied that your mind is perfectly free of bias and prejudice?

A. Yes, sir.

Q. You could try the case fairly and impartially on the evidence adduced?

A. Yes, sir.

Q. Is your mind in that condition that you could give the defendants the benefit of every reasonable doubt that might arise during the trial?

A. Yes, sir.

Q. You never heard the case discussed except as you said by some resident of Kent?

A. No, sir.

Q. Is your mind in that condition toward this defendant that you would be willing to be tried by a jury composed of men of a mind of like condition as yours now is?

A. Yes, sir."

In view of the above sworn testimony of the juror, and of his subsequent statements in the jury room, we think his conduct was most reprehensible. The statements alleged to have been made in the jury room must be taken as true, for they are not denied. If Hempy believed the statements made in the jury room, then he testified falsely upon his preliminary examination. Such conduct of a juror, when engaged in the consideration of a case, cannot be justified upon any ground consistent with the unbiased condition of mind which the law intends shall prevail in the jury box and jury room.

"It appears that while the jury was considering its verdict, one of the jurors stated to his fellows 'that the prisoner had heretofore stolen sheep, money and other things from his father.' Such conduct on the part of a juror is quite reprehensible, and will always prejudice the accused. Courts should distinctly charge juries in criminal cases that they must look alone to the testimony adduced in the evidence before them on the trial, and should not permit one of their number to communicate to them any fact in his knowledge not deposed to in court. Arrest the judgment and remand the prisoner." *Morton v. State,* 1 Lea (Tenn.), 498, 499.

"The alleged misconduct of Hutchinson is specifically set forth in the motion. Upon the hearing of the motion two of the jurors, M. A. Ebaugh and W. J. Iliff, were examined as witnesses. Ebaugh testified among other things, that during the deliberations of the jury Hutchinson stated to the other members of the jury that some of his (Hutchinson's) hedge had been burned in the same manner as the plaintiff's hedge, by the same company, and that the company had paid him $1.50 a rod as his damages for it; . . . . We think the motion for a new trial ought to have been granted, because of the statement made by the juror Hutchinson in the jury-room during the deliberations of the jury. Except for that statement the verdict of the jury might not have been rendered for the amount

for which it was rendered." *Atchison, Topeka & Santa Fe R. R. Co. v. Bayes,* 42 Kan. 609-611 (22 Pac. 741).

See, also, *State v. Woods,* 49 Kan. 237 (30 Pac. 520).

"Because of the evidence of the juror Gren to the jury after retirement to consider of their verdict, the fact that defendant was suspected of the former burning, and its probable injurious influence upon one or more of the jurors, this judgment must be reversed." *Mason v. State,* 29 Tex. App. 608 (16 S. W. 766).

"Third, upon the affidavit of one of the jurors 'that while the jury were in their room consulting as to their verdict, I stated to one or more of the jury that one P. McGeehan told me that he had one of those rakes from M. S. Robinson (defendant) and paid fifty-five dollars for it, and bragged tremendously on the working of the rake.' This affidavit was also stricken from the files on motion of plaintiff's counsel. It was error to strike this affidavit from the files, since it was an affidavit of a fact occurring in the jury-room, not essentially inhering in the verdict itself. Suppose the plaintiff had stepped into the jury-room and stated to the whole jury the same matter, and it had been heard or considered by them. No reasonable question could arise under the rule heretofore laid down as to the legality or propriety of receiving the affidavit of a juror as to such fact. A juror has no right to give testimony or state facts outside the case made in court to his fellow jurors, after their retirement and for their consideration, in making up the verdict in the case. The only proper way in which facts known to a juror can be given to his fellow jurors, is by having such juror sworn, to testify as a witness." *Hall v. Robinson,* 25 Iowa, 91, 93.

The court declined to reverse the above case, holding that the error of the court below in striking out the affidavit was not prejudicial error, for the reason that the facts stated in the affidavit were not such as could be reasonably said to have influenced the jury in reaching its verdict. But the principle under consideration here was strongly stated by

the court in that case, and the rule there announced as to jurors' affidavits we believe to be the correct rule here.

Under our code of criminal procedure (Bal. Code, § 6965), it is provided that misconduct of the jury is a ground for a new trial; and § 6966 provides that, when the application for a new trial is made upon that ground, the facts upon which it is based shall be stated in affidavits, as was done in this case. In considering the affidavits filed, we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict. It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors. We do not see how any other conclusion can be reached than that they were highly prejudicial, including, as they did, the statement of alleged damaging facts concerning appellant which had not been introduced in evidence upon the trial.

We think the court erred in not granting a new trial on the ground of misconduct of the jury, and also upon the other ground heretofore stated.

We do not deem it necessary to discuss the remaining assignments of error. The judgment is reversed, and the cause remanded, with instructions to the court below to grant the motion for a new trial.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT and WHITE, JJ., concur.

DUNBAR, J.—I concur in the result and in all that is said in the opinion with the exception of the statement

that we would doubtless decline to reverse the judgment under the assignment of error if the case at bar stood upon an equality with the case of *State v. Holedger,* 15 Wash. 443. I consider the practice there animadverted upon as exceedingly prejudicial, or, at least, it might be prejudicial, without there being any way to prove such prejudice, and it ought, therefore, to be held to be prejudicial error.