[No. 3889.    Decided September 5, 1901.]

W. H. MARVIN, *Respondent, v.* GEORGE W. YATES, *as Executor, Appellant.*

PLEADING—SUFFICIENCY OF COMPLAINT—ACTION FOR DIVISION OF PROFITS.

A complaint alleged that plaintiff invested funds for defendant's testator in real estate under an agreement that the decedent should sell upon plaintiff's advice, and plaintiff should have one-half of the net profits arising from the transactions; that decedent refused to sell a portion of the real estate when advised by the plaintiff and that plaintiff's share of the profits thereon would have been $9,050; that plaintiff

performed other services for decedent of the reasonable value
of $400 per annum, from January 1, 1887, to January 1, 1893;
that on or about June 1, 1889, plaintiff and decedent had an
accounting, whereby the latter agreed to convey or bequeath
to the former a certain piece of real estate of the value of
more than $12,000; that the decedent failed to either convey
or bequeath said realty, wherefore plaintiff demands judgment
for $11,850.  Held, that the action was not one upon an ac-
count stated, and was proof against demurrer on the ground
of not stating facts sufficient to constitute a cause of action,
since it stated facts showing a contract for a division of profits,
rather than an oral contract for the conveyance of realty.

SAME—DEMURRER—SPECIFICATION OF GROUNDS.

A demurrer for want of facts will not reach the objection that
two causes of action have been improperly joined.

SAME—OVERRULING DEMURRER—HARMLESS ERROR.

The fact that a demurrer on the ground that the action was
not commenced within the time limited by law was overruled
was harmless error, when it appeared from the reply and the evi-
dence that it could not have been sooner brought because the de-
fendant resided in another state.

EVIDENCE—RECITALS IN DEEDS AS TO CONSIDERATION—CONCLUSIVENESS.

In an action to recover a division of profits upon the purchase
and sale of real estate, the recitals in the deeds covering the pur-
chase and sale of such realty must be held conclusive of the
amounts given and received, when not shown to be incorrect or
disputed by other evidence.

SAME—TRANSACTIONS WITH DECEASED PERSON.

The statute (Bal. Code, §5991) forbidding a party in interest
to testify as to transactions had by him with, or statements made
to him by, a deceased person, was not transgressed in an action for
a division of profits arising from investments in real estate under
a contract with a deceased person, where the plaintiff did not
testify to conversations or transactions with such decedent, but
confined his testimony to his inspection of certain lots when
alone, stating their value at the time he saw them, and that deeds
were afterward made for such property to the deceased.

SAME—CHALLENGE TO LEGAL SUFFICIENCY.

Although the evidence in an action based upon a contract
giving plaintiff one-half of the net profits arising from real estate
investments was hardly sufficient to permit the jury to determine

the net profits, a challenge to the legal sufficiency of the evidence was properly overruled, where the evidence showed that defendant admitted more than three years after the dealings between him and plaintiff were closed that plaintiff's share was for an amount in excess of that for which suit was brought.

NEW TRIAL—MISCONDUCT OF JURY—IMPEACHMENT OF VERDICT.

A motion for new trial on the ground of the misconduct of the jury was properly denied where it was based upon the affidavit of one of the jurors that the jury reached its verdict by a certain method of calculation, even though he did not join therein, since such alleged misconduct inheres directly in the verdict itself, and one of the jurors cannot be heard to impeach the jury's verdict.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*Danson & Huneke (Hahn, Belden & Hawley, of counsel), for appellant.*

*W. C. Jones and P. F. Quinn, for respondent.*

The opinion of the court was delivered by

HADLEY, J.—The complaint in this cause avers, in substance, that between the first day of January, 1887, and the first day of January, 1893, the respondent, at the special instance of Lafayette Woodward, now deceased, rendered continuous services to said Woodward in the management of his business, property, and affairs in Spokane county, which services were of the reasonable worth and value of $400 per annum; that on or about the 1st day of January, 1887, respondent and said Woodward entered into an agreement whereby said Woodward agreed to furnish respondent funds for investment in real estate in the city of Spokane when, in the judgment of respondent, such investment would be profitable; that the said real estate so purchased should be sold when, in respondent's judgment, it was ad-

visable to do so, and respondent should receive as compensation for his services in making such investment one-half of the net profits realized by the sale of such property; that in pursuance of said agreement, respondent purchased a large amount of real estate in the city of Spokane, a part of which was sold at a large profit, and a part of which said Woodward refused to sell when advised and requested by respondent so to do, and the same is still held and owned by his estate; that the profits resulting from the said investment in which the property was sold or otherwise disposed of amounted to more than $14,100, and the profits that would have accrued to respondent upon the other property when respondent advised its sale amount to more than $4,000. It is further alleged that on or about the 1st day of June, 1889, respondent and said Woodward had an accounting concerning the matters hereinbefore set forth, and said Woodward then promised to convey or bequeath to respondent in payment of the claim above set forth, a certain lot and the building thereon situate in the city of Spokane, known as the Howard saloon, and that said property now is, and at all times since said settlement has been, of the value of more than $12,000; that in the month of March, 1899, said Woodward died at Minneapolis, Minnesota, his place of residence, and left a will, wherein he bequeathed the said property above mentioned, and all other property belonging to him at the time of his death, to other persons than respondent. It is next alleged that on the 19th day of May, 1899, the appellant, George W. Yates, was by the superior court of Spokane county duly appointed executor of the will of said deceased, Woodward; that on the 28th day of June, 1899, respondent presented his claim against the said estate to said executor, which was on the same day by him rejected. The complaint concludes with a prayer for judgment in the

sum of $11,850. A demurrer to the complaint was, by the court, overruled, and exception to such ruling was duly taken by appellant. Thereupon appellant answered the complaint, and admitted the death of said Woodward, the appointment of appellant as executor, and the presentation and rejection of the claim as alleged in the complaint. The remaining material allegations of the complaint are denied, and it is alleged affirmatively that, if any agreements were made, they were made orally, and not in writing, and that the last services performed by respondent, if any were performed, were rendered not later than January 1, 1893, more than three years prior to the bringing of this action. The reply alleges that during all of the times mentioned in the complaint the said Woodward was a resident of the state of Minnesota, and was not in the state of Washington, where the respondent resided, except casually, while passing through the state, and that he never stopped or remained in the state of Washington during said time to exceed ninety days in the aggregate. Upon the issues thus formed a trial was had before a jury. The appellant introduced no evidence. A verdict was returned in favor of respondent for the sum of $9,450. A motion for a new trial was interposed by appellant, which was, by the court, denied, and judgment was thereupon entered against appellant for the amount of the verdict. From said judgment this appeal is prosecuted.

It is assigned as error that the court overruled the demurrer to the complaint. Upon the motion of appellant before the demurrer was filed, the respondent furnished a bill of particulars showing that the alleged agreements were oral. It is therefore argued upon demurrer that, if the complaint states a cause of action at all, it is one upon an account stated; that respondent must be confined in his proof to the account stated, and must recover upon that

theory, if at all; and, furthermore, that the promise to convey or devise a certain piece of real estate, being oral, is within the statute of frauds, and cannot be enforced. Appellant's counsel urge this theory of the complaint with much energy. The court below adopted a different view of the complaint, and, we think, was not in error in that particular. The averment with regard to the agreement at the time the accounting was had is that the deceased, Woodward, promised to convey or bequeath a certain piece of real estate, which was and still is worth more than $12,000. The prayer of the complaint asks for judgment in the sum of $11,850. If respondent had intended his complaint to be one upon an account stated, he certainly would have demanded judgment for the full value of that which he alleges he was to receive under the agreement at the time of the so-called accounting. That value is stated to be more than $12,000. He, however, alleges that he performed certain services of a given value, and that in pursuance of the agreement concerning investments in real estate there accrued profits of stated amounts, to one-half of which he is entitled. One item of accrued profit is stated as being *"more* than $14,100," and another as *"more* than $4,000."  An aggregate of these is *more* than $18,-100. One-half of the amount specifically stated as profits is $9,050, and, if there is added to that sum $2,400 as the amount alleged to be due for six years of services, the sum becomes $11,450. The prayer of the complaint is for $400 more, presumably to cover the margin of the additional amounts indicated by the language of the complaint as above shown. We think a reasonable interpretation of the meaning of the pleader is that the averments concerning the accounting and the promise then made are intended to be in the nature of evidentiary matter, and as showing an admission of liability on the part of the deceased,

Woodward.   Appellant urges that, if the complaint is not treated as one upon an account stated, then there is an improper commingling of two causes of action,—one upon a *quantum meruit* for services rendered, and one upon the contract as to division of profits.   The demurrer, however, does not specify that ground of objection.   The only grounds mentioned are that the complaint does not state facts sufficient to constitute a cause of action, and that the action has not been commenced within the time limited by law.   The trial, therefore, properly proceeded upon any cause or causes of action stated in the complaint.   That the complaint stated a cause of action against general demurrer we think is clear.   As to the second ground of demurrer,—that the action was not commenced within the time limited by law,—it appears upon the face of the complaint that the deceased, Woodward, resided in the state of Minnesota at the time of his death.   It is true, the complaint does not show the length of time he had resided in Minnesota, but the reply states that during all the times of the transactions mentioned in the complaint he resided continually in the state of Minnesota, and this statement is sustained by the proof.   Even if it should be said that the demurrer was technically erroneously overruled upon that ground, it, in any event, proved to be harmless to appellant, in view of subsequent developments of the case.

A number of errors are assigned upon the rulings of the court upon the introduction of testimony.   We will not discuss them in detail, since we believe no material error was committed.   We think the deeds admitted in evidence were sufficiently shown to be connected with the real estate transactions to permit them to go to the jury.   It was objected that the recitals therein as to prices were not conclusive.   Respondent did not undertake to maintain that they were conclusive, but only that they were *prima facie*

evidence of amounts. The amounts have not been disputed by any evidence of appellant, and they must, therefore, be held to be conclusive in so far as they are not shown to be incorrect by other testimony.

It is assigned as error that the court permitted respondent to testify in violation of the statutory rule prohibiting a claimant from testifying concerning transactions had by him with, or statements made to him by, the deceased person. We think the court did not permit a transgression of the rule. Respondent was instructed by counsel to exclude from his answers anything concerning personal transactions with Woodward, or any conversations between them about such transactions. This, we think, respondent did. He testified that he looked at certain lots when he was alone, stating the time when he saw them, their value, and that deeds were afterward made for the property; but he did not say anything at all about the conversations or transactions between himself and Woodward. Considering the difficulties attending the proofs in this class of cases, and the usual temptation to transgress upon the statute, we think the respondent kept well within the rule as interpreted by this court in *Ah How v. Furth,* 13 Wash. 550 (43 Pac. 639).

It is insisted that the court erred in not sustaining appellant's challenge to the legal sufficiency of the evidence at the close of respondent's testimony. The averments of the complaint are that respondent was to receive one-half of the net profits arising from the real estate investments. There was evidence as to the amount of profits in gross, and it also appeared in evidence that rents accruing from some of the property had been collected, and also that expenses had been incurred for taxes, insurance, and repairs; but it does not appear what amount of rent was collected, or what amounts had been expended for the purposes above

mentioned. It is, therefore, argued by counsel that the jury could not determine the amount of the net profits from the evidence. The consideration of this question seemed to us at first to be fraught with considerable difficulty. Having in mind, however, the rule that the verdict of the jury should ordinarily be sustained, if there is reasonable evidence to sustain it, we have carefully examined the evidence with a view to ascertaining if this verdict can be sustained under the testimony. The witness Empey testified that some time in the months of September or October, 1896, he was present during a conversation between respondent and the deceased Woodward. He testified as follows concerning that conversation:

"Q. Just state what he said in the presence of Mr. Woodward, and what Mr. Woodward said to him, or what he said to Mr. Woodward. A. He told Mr. Woodward that he had brought me up there to explain this property, that he wanted to go in with me on. And Mr. Woodward said to him, 'Well, I ain't going to give you any money to put into a mining property;' and Mr. Marvin said, 'You are not giving me money, it is money that is coming to me.' He said, 'I understand that all right, but I don't want you to fool it away, I want to put it where it will do you some good some day.' And Will said, 'Where are you going to put it, what are you going to do?' And he said, 'Well, you understand I am not going to beat you out of anything that is coming to you, I will give you that block some day.' Q. Anything further said about the block? A. No. Q. Did they do any figuring between themselves as to about the amount of difference in money matters between them? A. Yes, they did; they were figuring there as to what amount that he thought—that Will thought he owed him. Will stated that he owed him about $12,000. . . . He says there was about—Will said he thought there was about $12,000 coming to him; and the old man said, 'Very well, whatever the difference is we will fix it.' Mr. Huneke: He said that to Mr. Wood-

ward?  A.  Yes, sir; Mr. Marvin said it to Mr. Wood-
ward.  Mr. Jones: And what did Mr. Woodward say?
A.  Mr. Woodward said, 'Well, whatever difference there is
between us, I will fix it up.  I don't want to give you any
money to fool away.'  Q.  State whether or not there was
any conversation between Mr. Marvin and Mr. Woodward
with reference to when he was going to give him this
French block?  A.  No.  There was not anything definite;
he said, 'I will give it to you some day.' "

The above testimony stands uncontradicted.  The conver-
sation mentioned occurred more than nine years after the
beginning of the period covered by the real estate invest-
ments.  The testimony is sufficiently clear that there had
been receipts and expenditures during the nine years, and
we think the jury could reasonably conclude, under the
above testimony, that Woodward's response to respondent
was an admission that he owed respondent at that time as
much as $12,000.  He at least did not undertake to dis-
pute the amount. This conversation is said to have occurred
only about two and one-half years before the death of
Woodward; and, since respondent had shown an amount
due at so recent a date, we believe, if the amount of the
indebtedness determinable from net profits became less
after that time, it, under the circumstances, reasonably de-
volved upon appellant to show it.  Presumably the books
and accounts of the deceased were in possession of appel-
lant, as his executor, and the executor was therefore pos-
sibly in position to show this fact even more conclusively
than respondent could have done.  The verdict, being for
more than $2,500 less than the $12,000 amount stated in
the above testimony, we think is sustained by said testi-
mony, and that the challenge to the legal sufficiency of
the evidence was properly denied.

It is urged as error that the court denied the motion for
new trial on the ground of misconduct of the jury.  One

juror, who seems not to have joined with the eleven others in the verdict, makes affidavit that the jurors who returned the verdict reached their conclusion without making any calculation of the amount due, except to deduct the claim of $400 per year for services from the amount prayed in the complaint. This amount for six years was $2,400, and the deduction of that amount from the $11,850 demanded in the complaint leaves just the amount of the verdict. While it is true the one juror appears not to have joined in the verdict, still he was a member of the jury that returned the verdict, and we believe the same rule should apply to his affidavit as would apply to those of the other jurors. Affidavits of jurors will be received to show misconduct of the jury where they do not state alleged facts which necessarily inhere in the verdict itself. The affidavits must state facts concerning the acts of the jurors only. It is not for a juror to say what effect certain conduct may have had upon the verdict, because of the well known principle that he cannot be heard to impeach the verdict; but the court must determine from the facts stated what effect, if any, the alleged misconduct had upon the verdict. *State v. Parker,* 25 Wash. 405 (65 Pac. 776). The affidavit in this case does not allege any facts as being misconduct except that the jury reached its verdict by a certain method of calculation. This alleged misconduct inheres directly in the verdict itself, and cannot be considered. As heretofore stated, there was evidence, in our opinion, to sustain the amount of the verdict, and the court cannot inquire into the mental processes by which the jurors determined the amount returned. Only facts which relate to the acts of the jurors or to influences brought to bear upon them outside of the evidence can be considered in this connection. We think

the court did not err in striking the affidavit of the juror, or in denying the motion for new trial.

For these reasons we believe the record does not contain any substantial error, and the judgment is therefore affirmed.

REAVIS, C. J., and FULLERTON, ANDERS, DUNBAR, MOUNT and WHITE, JJ., concur.