[No. 8657. Department One. July 9, 1910.]

## THE STATE OF WASHINGTON, *Respondent*, v. JESS LORENZY, *Appellant*.[1]

CRIMINAL LAW—STATUTES—REPEAL—SAVINGS CLAUSE. The savings clause in the penal code of 1909 (Rem. & Bal. Code, § 2294), providing that nothing in this act shall apply to an offense committed before the day when this act shall take effect and that such offense shall be punished under existing laws as if this act had not been passed, is sufficient to continue in force the penal provisions repealed by the act until the date when the new act went into effect.

CRIMINAL LAW—STATUTES—REPEAL—SAVINGS CLAUSE. Under the general savings clause in the act of 1901, which saved all proceedings "pending at the time of its enactment," and under the penal code of 1909 (Rem. & Bal. Code, § 2294), providing that nothing therein contained shall apply to an offense committed before it took effect but that such offense should be punished under the law existing when it was committed, it is not essential to a prosecution for such prior offense that it was pending when the penal code of 1909 took effect.

INDICTMENT AND INFORMATION—TIME FOR FILING—DELAY—WAIVER. After the information is filed, it is too late to move for the dismissal of a charge on the ground that no indictment or information was filed against the accused within thirty days after his incarceration, as required by Rem. & Bal. Code, § 2119, where accused passed the delay without complaint.

CRIMINAL LAW—NEW TRIAL—VERDICT—IMPEACHMENT. Under the statute making misconduct of the jury a specific ground for a new trial in a criminal case, the verdict may be impeached by affidavits of jurors where the misconduct does not "inhere" in the verdict, which means where it does not fall within or pertain to the legitimate issues in the case.

SAME. Where a juror, during deliberation, stated to other jurors, as of his own knowledge, facts material to the case tending to discredit the losing party as a witness, the misconduct does not inhere in the verdict and may be shown by affidavits.

SAME. In a prosecution for conniving at the prostitution of the wife of the accused, where the state was concluded by the testimony of the defendant that a certain house at B. was not a house of prostitution, it is misconduct, requiring a new trial, for a juror who lived at B., to state to other jurors during deliberation that if they would go to B. they would find the place to be "a house of prostitution yet" (FULLERTON, J., dissenting).

[1]Reported in 109 Pac. 1064.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered November 16, 1909, upon a trial and conviction of the crime of conniving at the prostitution of defendant's wife. Reversed.

*M. P. Hurd*, for appellant.

*Augustus Brawley*, for respondent.

CHADWICK, J.—Appellant was convicted of the crime of conniving at the prostitution of his wife. The charge is laid under chapter 123, Laws 1903 (Rem. & Bal. Code, §§ 2902, 2903), and the first point made is that, the original law being repealed by the new criminal code, the conviction cannot be sustained. This assignment is disposed of by the following cases: *State v. Newcomb*, 58 Wash. 414, 109 Pac. 355; *In re Newcomb*, 56 Wash. 395, 105 Pac. 1042; *State v. Hanover*, 55 Wash. 403, 104 Pac. 624, 107 Pac. 388.

However, appellant contends that the general savings clause passed by the legislature at its extraordinary session in 1901, to which reference is made in the *Hanover* case, is intended to apply only to proceedings "pending at the time of its enactment." It is true that the words quoted are used in the act, but when the whole act is considered in connection with section 42 of the criminal code (Rem. & Bal. Code, § 2294), there can be no doubt of the intention of the legislature to save the prosecution of all crimes under the law existing at the time of their commission. Under these statutes and the cases cited, it was not essential to the life of the charge that a proceeding was pending at the time of the enactment of the criminal code or at the time that it took effect.

The further point is made that, whereas defendant was arrested and incarcerated on July 2, 1909, and no information was filed within thirty days, nor until fifty-eight days thereafter, defendant should now be discharged under Rem. & Bal. Code, § 2119. It must be remembered that the jurisdiction of the superior court to try persons charged with crimes does not depend upon the statute, nor is jurisdiction

lost, except in case of a misdemeanor, where a dismissal results because of a failure to observe its provisions. An information was filed September 1, on which day defendant moved his dismissal. We think the motion came too late to even put the state to a showing. The object of the statute was to insure prompt advisement of the charge and a speedy trial. The statute is not so much directed to time, as to the nature of the charge and notice to the defendant. If a defendant is content to pass the delay until after the information is filed, he is in no position to complain, for the object of the law is attained. These observations are consistent with the previous holding of this court. *State v. Seright*, 48 Wash. 307, 93 Pac. 521.

While upon the stand as a witness in his own behalf, defendant was asked whether he had ever at any time connived at or consented to his wife being in a house of prostitution, and whether, if she ever did enter a house of prostitution for the purpose of living a life of prostitution, it was with his consent. He answered all such questions in the negative. On cross-examination defendant was asked a number of questions tending to show that his wife had been an inmate of houses of ill fame with his consent. Several places in Skagit county were enumerated. Among other things, he was asked about being at the place of Janis & Cheader at Baker, Washington. He described it as a restaurant and saloon, and said that his wife was stopping at the hotel which was "right where the saloon is and the restaurant." Appellant was a professional cook and was employed at the restaurant. There was nothing disclosed to indicate that the place was a house of prostitution, although the plain insinuation of the questions asked was that it might be so. The state was content to be concluded by the answer of the appellant. When the jury had retired, the character of the place became a subject of discussion, and one of the jurors who lived at Baker informed the other jurors that, if "they would go to Baker, they would find it to be a house of prostitution yet." It is not seriously

contended that the offending juror kept within the due bounds of his duty, but it is insisted that the wrong inheres in the verdict, and that cannot be impeached, under the authority of *State v. Aker*, 54 Wash. 342, 103 Pac. 420; *Ralton v. Sherwood Logging Co.*, 54 Wash. 254, 103 Pac. 28; *State v. Parker*, 25 Wash. 405, 65 Pac. 776, and *Marvin v. Yates*, 26 Wash. 50, 66 Pac. 131. In considering sections 2181, 2182, Rem. & Bal. Code, this court said in the *Parker* case that the court would entirely disregard those portions of affidavits filed in support of a motion for a new trial which tend to impeach the verdict of the jurors, and consider only those facts stated in relation to the misconduct of the juror, and which in no way inhere in the verdict itself. While the authorities divide upon the right to impeach the verdict by the affidavit of a juror, we think that the *Parker* case, in the light of our statute making misconduct of the jury a specific ground for a new trial in criminal cases to be shown by affidavit, is the true rule. If it were not so, the statute would have no meaning, and it might be impossible to impeach a verdict no matter how prejudicial the misconduct, for it is known that the deliberations of jurors are conducted in secret.

The only question open, therefore, is, Does the error inhere in the verdict? We think clearly that it does not. We have found no case or legal phrase defining the term "inhere." The common meaning of the term as defined in the dictionary is, "to be fixed or attached permanently to something." It would seem, then, that the natural way to express the definition of the word as here applied would be to say that it means lost in, or covered by, the verdict. Verdicts are rendered upon the evidence received in open court, and the true test would be whether the misconduct complained of fell within, or pertained to, the legitimate issues of the case, so that the verdict might have been influenced by it. It has been held that a verdict will not be set aside because of the knowledge of a defendant's character by a juror, since the jury must in some degree act upon its knowledge of the character of a

party. But we find no cases holding that a juror can make of himself an impeaching witness upon a question of fact which, so far as the record shows, is foreclosed against the state.

This case is to be distinguished from those rejecting a juror's affidavit that he has been influenced by his fellow jurors or as to his reasons for agreeing to the verdict, or that improper arguments were resorted to, or that the character of either litigant was discussed, as these matters inhere in the result and a showing thereof cannot be made by affidavit. All of these things depend upon the opinion of the juror as to the probable consequences of a case, and will always be rejected. But, on the contrary, proof of facts constituting actual misconduct will always be received. In the *Aker* case this distinction is sharply drawn. The court said:

"It is not claimed that the expression of opinion was based upon any fact outside the testimony which had been given upon the trial, or that the juror stated any facts relating to the accused, or that the expressions of opinion were made within the hearing of any person other than the jurors themselves."

In *Ralton v. Sherwood Logging Co.*, *supra*, the civil statute, Rem. & Bal. Code, § 399 was under consideration. After noting that it furnished a sole exception to the rule that a verdict could not be impeached by the affidavit of jurors, the court distinguished the case from the *Parker* case, saying:

"But in that case the conduct of the juror upon which the court awarded a new trial consisted of very damaging statements against the accused made to the jury, while deliberating, entirely outside of the evidence, touching his knowledge of the accused's being connected with other crimes thar the one involved in the trial, . . ."

That it is ground for a new trial that, after the jury has retired for deliberation, a juror has stated to the other jurors as of his own knowledge facts material to the case

or tending to discredit the losing party as a witness, is laid down in 29 Cyc. 810, and 12 Enc. Plead. & Prac. 585, where numerous authorities are cited. to prove and sustain the rule. It is true that the juror says that he was without bias or prejudice, but as was said in the *Parker* case, that is not for the juror to determine. "It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors." The question must be decided by the court as a matter of law, and the rule is that, if it be reasonably probable that the juror's evidence influenced the verdict, it is such misconduct as will require a new trial. Being unable to say that the testimony of the juror did not influence the jury, we are bound to give the appellant. the benefit of the doubt and order a new trial.

Other errors are assigned but are not discussed, and we find no merit in them.

The case will be reversed and remanded for a new trial.

RUDKIN, C. J., GOSE, and MORRIS, JJ., concur.

FULLERTON, J. (dissenting)—The jurors were on oath to try the issues between the state and the defendant according to the evidence. And since the record does not show that they disregarded their oath, since the record does not show that in making up their verdict they gave heed to the random remark of the juror of which complaint is made, the court should presume that they. obeyed the oath, rather than presume that they disregarded it. Juries are composed of men of intelligence and understanding, and it is time that courts abandoned the folly of treating them as if composed of wayward children. The judgment should be affirmed.