STATE OF INDIANA *v.* BECKWITH ET AL.

[Nos. 27,992, 27,993, 27,994.   Filed October 21, 1944.]

*James A. Emmert*, Attorney General, *Sherwood Blue, Frank Haupt*, and *Saul Rabb*, all of Indianapolis, for appellant.

*Robert L. Carrico, Russell J. Dean*, and *Rochford & Rochford*, all of Indianapolis, for appellees.

RICHMAN, J.—One judgment was rendered below by a special judge sustaining the several motions of appellees for discharge upon indictments in three cases charging them with embezzlement of large amounts of public funds while they were acting

as deputy clerks of the Municipal Court of Marion County from January 1, 1935 to January 1, 1939. The parties to the three appeals have briefed them as one based on the transcript in No. 27992 which comprehends all of the subject-matter of the other transcripts. From the order book entry of the judgment it appears that the special judge delivered a written opinion which, at our request, though not in the record, was read in oral argument. It is apparent therefrom that he considered matters not in the transcript before us. It is certified by the clerk below as a complete transcript of the entire record, the parties have accepted it as such and by it they and we are bound.

The indictments were returned by the Grand Jury, examined and the amount of bail endorsed thereon in open court by the judge thereof July 2, 1941, the Wednesday before the July term began on the following Monday. These proceedings are shown by proper order book entry currently made by the clerk. From that time until the present regular judge assumed office January 1, 1943, not a single order book entry was currently made of any of the proceedings in the three cases. The several motions for discharge were filed May 5, 1943 during the January 1943 term. Intervening were the July 1941 term and the two terms of 1942.

Two motions for *nunc pro tunc* entries were filed, one by the State May 5, 1943, and the other by appellees a few days later. After hearing and submission of evidence the present regular judge of the court sustained some and overruled others of the specifications of the motions. From those sustained, and the *nunc pro tunc* entries accordingly made, as of dates prior to January 1, 1943 and from the regularly made entries thereafter, all as copied in the transcript, the proceed-

ings so far as they need here be detailed were as follows: Entry made as of October 3, 1941, shows that defendant Early "in open court makes and files his recognizance bond" which, copied therein, names Alice Early surety with him on a $2,500 bond dated October 2, 1941, taken and approved by the clerk October 3, 1941. It is followed by an affidavit of Alice Early that Anna Brady died March 27, 1941. Appellees attach some significance, which we fail to see, to the fact that this affidavit is dated June 20, 1941.

In November, 1941, the then regular judge of the court disqualified himself and submitted a list of names from which the parties might select a special judge. In such manner two special judges were selected each of whom declined to serve and a third was selected and qualified May 28, 1942. On June 16, 1942, appellee Ross in open court executed his recognizance bond in Cause 74577. The defendants on July 16, 1942, waived arraignment and entered pleas of not guilty. This special judge served until April 17, 1943, when he resigned. Aside from the proceedings above mentioned no steps were taken while he was serving.

The only data in the record upon which we may rest our conclusions are these order book entries. A bill of exceptions discloses that:

> "At said hearing, oral arguments were heard on behalf of the defendants and the State, and both sides rested without tendering or offering any evidence in the matter. The court took judicial knowledge and notice of the record of the case and stated that he would make his ruling solely and wholly upon the record in the case, to which statement there was no objection by any of the parties, and the matter was taken under advisement by the court. Thereafter on the 17th day of January, 1944, the court handed down his written opinion based upon the records in the case and discharged said defendants from further prose-

cution upon said indictments. Immediately after the court pronounced judgment, the State of Indiana, through its Prosecuting Attorney, Sherwood Blue, objected to the court's ruling on said motions for discharge without first hearing evidence thereon, and objected and excepted to the ruling of the court."

The Indiana Bill of Rights, Art. I, § 12, provides that "Justice shall be administered . . . speedily, and without delay." So far as we have been able to find, the first attempt by statute to implement this constitutional provision was in 1881, when two sections which with slight amendment now stand as §§ 9-1402 and 9-1403, Burns' 1942 Replacement, §§ 2238 and 2239, Baldwin's, 1934, were enacted, the former providing that "no defendant shall be detained in jail, without a trial, on an indictment or affidavit, for a continuous period embracing more than two (2) terms after his arrest and commitment thereon . . . " except for the same three contingencies mentioned in the latter which reads as follows:

> "No person shall be held by recognizance to answer an indictment or affidavit without trial for a period embracing more than three (3) terms of court, not including the term at which a recognizance was first taken thereon, if taken in term time; but he shall be discharged unless a continuance be had upon his own motion, or the delay be caused by his act, or there be not sufficient time to try him at such third term; and in the latter case, if he be not brought to trial at such third term, he shall be discharged, except as provided in the next section."

Appellees' motions for discharge track this section confirming the State's assertion that appellees, originally at least, predicated their right to discharge solely upon the provisions of the statute. They severally allege

therein that on the same day, July 2, 1941, when the indictments were returned, they were "arrested and let to bail" and since have "stood ready for trial; and that said cause of action herein has gone through and beyond three full terms of Court, not including the term at which the recognizance was first taken, without any delay upon the part of this defendant."

If appellees relied solely on the statute we think the special judge erred in sustaining their several motions. In *Woodward* v. *State* (1910), 174 Ind. 743, 93 N. E. 169, the appellant alleged error in overruling such a motion. The court said "That whenever any one seeks the benefit of a statute he must, by allegation and *proof* bring himself clearly within its terms." (Our italics.) The court held his motion defective for failure to allege that the delay was without his fault. Several other cases are to the same effect but none deal with the question of proof. The motion itself is not proof even when it is verified which was not the case here. *Soucie* v. *State* (1941), 218 Ind. 215, 226, 31 N. E. (2d) 1018, 1022. The statute prescribes no procedure. Under analogous circumstances we said recently in *Kuhn* v. *State* (1944), *ante* p. 179, 52 N. E. (2d) 491:

> "Perhaps there should be a rule prescribing the procedure, but none now exists. In the absence thereof, the pleading and proof of the issue must be governed by the procedure applicable to other similar issues presented by motion. If the evidentiary facts are admitted there may still exist a question as to their legal effect. If the facts are denied they must be proved."

Here there was no admission of any allegations in the motions and their denial must be assumed from the fact that the State resisted.

If from the record before us, in the absence of evidence, the special judge might have assumed that the delay was not caused by any act of appellees, he certainly was going too far in assuming that appellees were arrested and let to bail on July 2, 1941. They asked the regular judge to make a *nunc pro tunc* entry to that effect. He refused for lack of any memorial upon which it might be based. Nothing transpired, according to the record, after the indictments were returned and the amount of bail endorsed thereon, until October 3, 1941 (July term) when Early made his recognizance. The bond of Ross was not filed until June 16, 1942. The record is silent as to recognizance made by the other two appellees. Without any indication in those recorded, or the entries of their filing and approval, that they were in lieu of prior similar undertakings, and none is shown, is it not fair to assume that they were the only ones given by these appellees?

But appellees resort to the doctrine of judicial notice. From the fact that there is no record indicating that they were in jail and the further fact that they appeared in person at the time set for arraignment they say that the special judge might take judicial notice of their arrest and letting to bail upon the presumption that the sheriff performed his duty. We have some trouble in accepting this theory even in part, but if it be presumed that at some time after the indictments were returned they were arrested and in some manner satisfactory to the court released for appearance when notified, upon what reasonable grounds could the special judge, or we, presume that their arrest and release occurred between July 2 and July 7, 1941? There is a record of what happened

July 2, which excludes an inference of any further proceedings on that day. The next day was available for action but Friday, July 4 was a holiday, and Saturday the last day of the term was a half holiday. We are not unacquainted with the fact that often, when such holidays come toward the end of the week, only emergency business is transacted in public offices. It may be, as asserted in oral argument, that July 2 was treated as the last day of the term.

Frequently an accused is not arrested for several days through no fault of the sheriff. The proper conduct of his office is not so rigidly prescribed by law as to require immediate arrest, even if a *capias* has been issued which here the record does not show. In the face of the clerk's failure to enter any proceedings from July 2, 1941 until January 1, 1943, we should have insuperable objection to assuming that he, during that broken week-end, performed his duty to issue a *capias*. What actually occurred is wholly speculative. The doctrine of judicial notice may not be stretched to reach the result appellees desire and we must hold that there was a failure of proof bringing them within the terms of the statute.

In *State v. Kuhn* (1900), 154 Ind. 450, 57 N. E. 106, it was said that these statutory "provisions express the legislative judgment of what constitutes a reasonable time for the State's preparation for trial and mark(s) the limit of the State's right to hold a defendant without trial." See also *McGuire* v. *Wallace* (1886), 109 Ind. 284, 287, 10 N. E. 111, 112. But no Indiana case which we have been able to find disposes of the question of what is a reasonable time, independent of the statute, beyond which under the Bill of Rights the trial of an accused may not be delayed. It does not appear from the record that the special judge was

attempting to answer this question but it cannot be overlooked by us since it is our duty to affirm the judgment if regardless of the statute the special judge reached the correct conclusion.

In approaching the question a court must have regard to conflicting interests, those of organized society that an offender against its laws shall not go free, and those of the individual that his trial shall not be delayed. These interests are recognized in every definition of a "speedy trial," the term used in the Sixth Amendment applying to prosecutions in federal courts, and having the same meaning as the words "speedily and without delay" in the Indiana Bill of Rights. In 22 C. J. S. *Criminal Law* § 467 (3) the holdings of many cases are summarized as follows:

> "A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances."

In the next paragraph the text asserts that "The right to a speedy trial is necessarily relative; it is consistent with delays . . . ." Due allowance must be made for the delays which are a natural incident to every criminal prosecution. These must be regarded as reasonable. The guaranty is against unreasonable delay.

What is reasonable or unreasonable is usually a conclusion to be derived from facts and circumstances presented to a trier of facts. Ordinarily a judge does not assume to draw upon his own experience for a solution of the problem but requires the parties to produce the evidentiary facts. This was not done by the special judge. From the recitals in

the bill of exceptions that "both sides rested without tendering or offering any evidence" it would appear that he took the only remaining alternative and looked to the record, of which, of course, he might take judicial notice. In it, however, we do not find sufficient facts from which to draw a conclusion that the trial was unreasonably delayed. It shows no delay by continuance requested by appellees, but this does not exclude delay caused by them for frequently a defendant is responsible for a court's not setting his case for trial in which event there would be no order book entry. The record affirmatively shows some explainable delay, more than ought to be necessary, in the selection of a special judge when the regular judge, five months after the indictments were returned, disqualified himself. Even though he earlier knew he would take this action this alone would not be sufficient excuse for delaying arraignment and fixing a trial date. Then for almost a year, May 28, 1942, to April 17, 1943, the court was properly constituted with a special judge whose failure to set the cases for trial also is wholly unexplained. If these delays were in compliance with requests of attorneys for the appellees or themselves, they may not take advantage thereof. This the statute provides but it is also true independent of the statute. Most of the delay shown by the record was susceptible of explanation adverse to appellees' contentions. Under these circumstances we cannot justify, nor do we think the special judge would attempt to justify, a conclusion without evidentiary support that the delay was unreasonable. The assertion in appellees' motion that there was no delay upon their part was not evidence. It was merely an allegation, required by the statute as construed in *Kuhn* v. *State, supra,* putting upon them the burden of proof. This obligation to produce evi-

dence that they were blameless was just as essential under the Bill of Rights as under the statute.

Again in 22 C. J. S. *Criminal Law*, § 469, it is said:

"While there is some authority to the contrary the general rule is that a demand for trial, resistance to postponement, or some other effort to secure a speedy trial must be made by accused. to entitle him to a discharge on the ground of delay, at least when accused has been admitted to bail, or is not within the custody of the court."

One of the cases cited as authority for the statement is *State* v. *Miller* (1913), 72 Wash. 154, 129 P. 1100. It appears therein that a conviction had been reversed on appeal and after the cause had again reached the trial court more than sixty days elapsed without resetting for trial. A motion for discharge was sustained and the State appealed. It was contended in behalf of appellee that the statute, which required dismissal "if the accused be not brought to trial within sixty days after the indictment is found or the information filed," should be construed to require as prompt a second trial but the court held otherwise. As we are doing in the case at bar, the court then looked to the constitutional provision as a possible source of authority to affirm the judgment. We quote at some length from the opinion:

"The statute fixes a *specific time beginning with a specific event* within which trial must be had unless good cause to the contrary be shown. That specific event, the filing of information, limits the operation of the statute to the first trial. The provision in the constitution, art. I, § 22, contains no such limitation. The provision for a speedy public trial therein contained, therefore, applies to all time during which the accused is subject to trial, and inasmuch as it fixes no time as defining a

speedy trial, the time of retrial after the statute has been satisfied by a first trial is of necessity left to the judicial discretion of the trial court. What in such a case is a speedy trial must depend upon the circumstances of the case.

> " 'Again, it is required that the trial be speedy; and here also the injunction is addressed to the sense of justice and sound judgment of the court.' Cooley, Constitutional Limitations (7th ed.) 440.

"There is another distinction between the mandate of the statute and the provision of the constitution. The one is a statutory mandate, the other a constitutional privilege. The statute imposes upon the state the duty to bring the accused to trial within the sixty days. The state must take the initial action. The constitution accords a right to the accused to a speedy public trial. If he does not demand it, he should not complain.

"Such is the rule under statutes not mandatory.

> " 'A demand for a trial, a resistance to a postponement, or some other effort to secure a speedy trial must be shown to entitle the accused to a discharge under the statute by reason of the delay of the prosecution.' 12 Cyc. 500.

"That a constitutional right may be waived by the accused has been repeatedly held by this court. *State* v. *Ash,* 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611; *State* v. *Quinn,* 56 Wash. 295, 105 Pac. 818. This court has also held that even the mandatory statutory provision is waived by a failure to ask for a dismissal until just before trial. *State* v. *Alexander,* 65 Wash. 488, 118 Pac. 645. See, also, *State* v. *Seright,* 48 Wash. 307, 93 Pac. 521; *State* v. *Lorenzy,* 59 Wash. 308, 109 Pac. 1064, Ann. Cas. 1912 B. 153. *A fortiori* it would seem that the constitutional right should be deemed waived by the failure to ask for a trial, the silent acquiescence in the delay, and the failure to claim the constitutional right until the cause had been definitely set for trial upon the request of the state, and then only by a motion to dismiss.

" 'As to what constitutes a speedy trial, and what action must be taken by the accused to avail himself of the right to a dismissal because of delay, the authorities are conflicting. Except in so far as statutes may otherwise require, we think the rule should be that a demand for trial, resistance to postponement, or some other effort to secure a speedy trial on the part of the accused, should be shown to entitle him to a discharge on the ground of delay. 12 Cyc. 500. All our statute requires is a trial at the next term after the finding of the indictment, unless for good cause shown or upon application of the accused it be postponed. It does not declare that in case of a disagreement a second trial must be had at the next succeeding term. Nevertheless, under the constitution, another trial should follow a disagreement with reasonable speed or the action should be dismissed. What is reasonable speed depends upon the circumstance surrounding each particular case. There is, therefore, nothing in our statute or constitution which precludes recognition of the rule that, where one trial has taken place in compliance with the statute, which has resulted in a disagreement, it is incumbent upon the accused to at least manifest a desire for another trial before he is entitled to a dismissal on the ground of delay.' *State* v. *Lamphere,* 20 S. D. 98, 104 N. W. 1038, 1040."

In Indiana, as well as in Washington, constitutional rights may be waived. *Brown* v. *State* (1941), 219 Ind. 251, 37 N. E. (2d) 933; *Schneider* v. *State* (1942), 220 Ind. 28, 40 N. E. (2d) 322; *Spitter* v. *State* (1943), 221 Ind. 107, 46 N. E. (2d) 591. Delay is often more prejudicial to the state than to the defendant. Witnesses die or their memories fail. Documentary evidence is lost or disappears. Restitution of appropriated money or property damps the ardor of prosecution. These and other considerations may content a defendant to

remain silent and inactive in the hope of better chances in the trial or that it may never occur. Delays occurring with such acquiescence on his part are not "capricious" or "oppressive." Nor should their assignment as ground for discharge appeal "to the sense of justice and sound judgment of the court."

It was impossible without evidence for the special judge to ascertain what reasons motivated the presiding judges and the attorneys for the state in ▮ seeming to dally with these cases for so long a time or to determine whether appellees contributed to or acquiesced in such inaction. The court records do not deal with conversations between counsel for the parties or with the presiding judge. When at the hearing appellees rested without offering any explanation, the State could likewise afford to rest because the burden was upon the moving party. It has not been sustained. The judgment must be reversed.

We shall not order appellees to be tried upon the indictments. There should be another and more comprehensive hearing upon the motion. To ascertain the causes for the delay inquiry should be made of all persons in position to know, including the judges who were presiding and the attorneys who represented appellees and the State. All order book entries relied upon should be read into the evidence. If there were proceedings in other cases having probative value on the issues they should be treated as any other evidence. Should there be another appeal we trust that the record therein will be the same record upon which the trial court rests his judgment.

Judgment reversed for proceedings in conformity with this opinion.

NOTE.—Reported in 57 N. E. (2d) 193.