IN RE ANNEXATION OF CERTAIN TERRITORY TO CITY OF
PRINCETON ET AL. *v.* THE CITY OF PRINCETON ET AL.
[No. 18,840.  Filed December 11, 1957.]

*Maurice B. Miller* and *Arthur S. Wilson,* both of Princeton, for appellants.

*Robert Fair, Warren W. Barnett* and *McDonald & McDonald,* all of Princeton, for appellees.

PFAFF, J.—The City of Princeton enacted a general ordinance defining the city boundaries whereby certain territory not theretofore within the city limits would be annexed. Appellants, deeming themselves aggrieved and injuriously affected, took what is designated by

statute as an appeal, by filing their remonstrance in the trial court.

After hearing the evidence the court made a general finding for the appellees and against the appellants and entered judgment accordingly.

Appellants assigned as error the overruling of their motion for new trial which is based on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law.

§48-701a, Burns' 1950 Replacement (1957 Pocket Supp.), provides certain primary determinants of an annexation's merit, as follows:

"(a) The annexation is in the best interests of the city and of the territory sought to be annexed.

"(b) The area is urban in character, being an economic and social part of the annexing city.

"(c) The terms and conditions set forth in the ordinance are fair and just.

"(d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.

"(e) The area sought to be annexed, if undeveloped, is needed for development of the city in the reasonably near future.

"(f) The lines of the annexation are so drawn as to form a compact area abutting the municipality."

It is further provided that if the judge shall find that the primary determinants enumerated apply to the annexation, it shall take place, but if the presence of these primary determinants cannot be demonstrated in the evidence, the annexation shall not take place.

Appellants argue that the uncontradicted evidence and the evidence and inferences therefrom favorable to appellees compel the conclusion that the presence of the primary determinants is not demonstrated but, on the contrary, their absence was demonstrated.

Appellants' Exhibit No. 2, a map of the city showing the areas proposed to be annexed, was introduced in evidence. On this map these areas are lettered alphabetically "A" to "I" inclusive. Such areas have the following acreage: Tract "A," 61.4 acres; Tract "B," 66.9 acres; Tract "C," 152.0 acres; Tract "D," 90.2 acres; Tract "E," 38.5 acres; Tract "F," 166.7 acres; Tract "G," 59.5 acres; Tract "H," 112.8 acres; and Tract "I," 26.1 acres. The city at present has an area of approximately $2\frac{1}{2}$ square miles and the total of the areas proposed to be annexed is 774.1 acres or approximately $1\frac{1}{4}$ square miles.

By a special bill of exceptions it is shown that immediately preceding the pronouncing of judgment the court read a statement entitled "Opinion and Reasoning of the Court." In this statement the court said, in substance, that of the six statutory primary determinants, all favored annexation of a part of the territory; that as to other parts some of the determinants favor and some oppose the annexation; that as to some of the territory, none of the determinants favor annexation; that the court could not rule separately as to different parts, but must find that the primary determinants favor the annexation as a whole or that they do not. The court then proceeded to discuss the statutory determinants as they apply to certain areas. The court concluded, "areas 'A,' 'B,' 'C' and 'I' appear to me to be areas where the primary determinants have either not been met or have been met only in part. However, since the area involved is small in relation to the total area involved and since the annexation is of merit to so much of the area, I feel that I have no alternative except to approve the annexation and find against the remonstrators."

Appellees take the position that since the court's finding was a general finding, all of the primary determi-

nants must be considered as having been found to have been demonstrated; that there was no request for a special finding of facts and conclusions of law, and that the trial court's opinion is not entitled to consideration. The opinion of the trial court was read prior to the adoption of Rule 1-7B, Rules of the Supreme Court, which reads as follows:

> "The court may on its own motion in any case make special findings of facts and conclusions of law thereon which constitute the grounds of its action or judgment; provided it shall indicate its intentions to do so on or before the conclusion of the evidence. It may, in any case where special findings of facts and conclusions of law are to be made, require the attorneys of the parties to submit to the court a draft of findings of facts and conclusions of law which they propose or suggest that the court make in such a case."

A review of the Indiana decisions concerning written opinions of the trial court reveals some inconsistency. Of course, if such opinions are not brought into the record or are not in the way of an opinion concurrent with a ruling, they are not entitled to consideration. *The Lake Erie and Western Railroad Company* v. *Mugg, Administrator* (1892), 132 Ind. 168, 31 N. E. 564; *Himelstein Bros., Inc.* v. *The Texas Co.* (1955), 125 Ind. App. 448, 125 N. E. 2d 820; *State ex rel. Conner* v. *Pritchard, Judge* (1944), 115 Ind. App. 55, 54 N. E. 2d 283, transfer denied. In *State ex rel. Conner* v. *Pritchard, Judge, supra,* this court, speaking through Judge Crumpacker, said:

> "The letter which the relator now seeks to have incorporated, by bill of exceptions, in the record of the case of *Jones* v. *Conner* is not an 'opinion, decision or direction of a judge, delivered during the trial,' nor is it any part of the 'proceedings on the trial' of said cause. It constitutes nothing more than an extra-judicial and, we may add by way of collateral observation, an extra-judicious comment on a ruling the respondent had previously made in

a cause in which he had already entered final judgment. Had the expressions used in the letter been announced by the respondent by way of an opinion concurrent with his ruling on relator's motion for a new trial or by way of a judicial memorandum appearing in the files or minutes of the cause we would have, perhaps, a situation falling within the rule laid down inferentially in *Terrell* v. *Butterfield, Executor* (1883), 92 Ind. 1, and positively stated in *Davis* v. *Boston Ry. Co.* (1920), 235 Mass. 482, 126 N. E. 841; *Pheeney* v. *Malden Coal Co.* (1938), 300 Mass. 60, 14 N. E. (2d) 136; and *Pillow* v. *Long* (1939), 299 Ill. App. 542, 20 N. E. (2d) 896, to which cases we have been referred. . . ."

However, it is noted in one case where it appeared from the order book entry that the trial judge had delivered a written opinion, this opinion, though not in the record, was, at the request of the Supreme Court, read in oral argument. *State* v. *Beckwith* (1944), 222 Ind. 618, 621, 57 N. E. 2d 193.

It was at one time held that an opinion of the trial court has no place in the record and that even if embodied in the record on appeal it could not be considered for any purpose. *Hinshaw* v. *Security Trust Co.* (1911), 48 Ind. App. 351, 93 N. E. 567; *Katterhenry* v. *Arensman* (1915), 183 Ind. 347, 350, 108 N. E. 101. In *Himelstein Bros., Inc.* v. *The Texas Co., supra,* this court, in a dictum, followed the Katterhenry case.

In later opinions of the Supreme Court written opinions of the trial court were considered.

In *Beesley* v. *State* (1941), 219 Ind. 239, 37 N. E. 2d 540, which was a proceeding to remove a township trustee from office, which proceeding was to be conducted in a summary manner and where the ordinary rules of civil procedure did not apply, our Supreme Court said:

"After hearing the evidence, the trial judge read his decision to the effect that there was insufficient evidence to sustain sixteen of the nineteen charges,

and that there was evidence sufficient to sustain the other three charges, after which there was a judgment against the defendant. The written decision was relied upon by the defendant as a basis for a motion to modify the judgment so as to show the particular causes for removal found to have been established, and it is brought into the record by a bill of exceptions. The appellant does not set out the accusation against him in its entirety in his brief, and he brings into the brief only so much of the evidence as pertains to the three specifications upon which the trial court found against him. The appellee concedes that, in announcing the decision from the bench, the trial court found against the defendant upon three specifications only, and that the evidence respecting these three is in the brief. It is contended, however, that under the rules of civil procedure, the written decision is not a part of the record, and that, since all the evidence in the case is not set out in the brief, we cannot consider the evidence, and that, since the accusation in its entirety is not set out, we cannot consider the sufficiency of the accusation.

"Proceedings under the statute are to be conducted in a summary manner, and the ordinary rules of civil procedure do not apply to the procedure in the trial court, and no good reason is seen why they should be made to apply here. Informality in the trial court might result in the doing of something, or the failure to do something, which, under the rules of civil procedure, would amount to error which would require a reversal in a civil action, but such acts or omissions should not have that effect where the court is authorized to proceed informally and substantial rights have not been invaded. If the cause had been tried as a civil action, the defendant would have been entitled to a special findings of facts and conclusions of law, which, if the facts were found to his satisfaction, would have avoided the necessity of bringing the evidence into his brief. In this proceeding the trial court was not required to follow the practice. That the court, reading from the bench, announced that he found in favor of the defendant in all but three of the charges, and that the part of the accusation containing the charges upon which he found against the defendant and the evidence upon that part of the accusation are in the brief, is not

disputed. It appears therefore that all of the substantial matter necessary for a determination of the question of whether that part of the accusation upon which the defendant was found guilty is sufficient under the statute, and whether there was sufficient evidence to sustain the judgment, is fully set out in the brief, and we will proceed to a determination of the merits of the controversy."

In a more recent case, which was an appeal from a judgment setting aside an order of the Public Service Commission, the trial court prepared and filed a written opinion outlining its views of the law involved. *Pub. Serv. Comm.* v. *Fort Wayne U. Ry. Co.* (1952), 232 Ind. 82, 91, 111 N. E. 2d 719, Judge Draper, speaking for the court, said:

"The trial court, though not requested to make findings of fact and state its conclusions of law thereon, prepared and filed a written opinion in which the court reviewed some of the evidence and outlined its views concerning the law of the case. Relying upon the familiar general rule that the finding of the court must, under such circumstances, be regarded and treated as a general finding, it is insisted that the finding must be taken as a general finding for the appellee upon all the issues presented to the court.

"But in *Gavin* v. *Miller* (1944), 222 Ind. 459, 54 N. E. 2d 277, a case in which the court made special findings of fact and predicated its judgment thereon though no special findings of fact or conclusions of law were requested, we held that it was proper to look to the findings to determine what matters were actually adjudicated. It is important for this court to know the basis upon which administrative action is taken, and the reason for the vacation of the orders of such an agency by a court. *We should not be required to assume that the court has decided an issue when the record, to which we may look to ascertain the meaning and effect of a judgment, State ex rel. Booth* v. *Beck Jewelry Enterprises (1942), 220 Ind. 276, 41 N. E. 2d 622, 141 A.L.R. 876, reveals that the court has not, in fact, done so."* (Emphasis supplied.)

See also Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2333, Comment 12.

The case at bar is a special proceeding to which the rule of the code of civil procedure does not apply in the particular under consideration. In *Vesenmeier et al.* v. *City of Aurora, etc.* (1953), 232 Ind. 628, 635, 115 N. E. 2d 734, the Supreme Court stated:

> "... This is not a matter wherein the appellants asserted a cause of action which they were undertaking to pursue. The remonstrance here asserts a defense—not a cause of action. This proceeding is in the nature of an appeal and is so designated by §48-702 *supra*. . . ."

We have, however, examined the record in the light of the evidence and inferences most favorable to appellees, without reference to the trial court's opinion. Such evidence reveals the facts hereafter set forth.

The City of Princeton is a city of the fifth class with a population of approximately 8,000 people, located entirely within Patoka Township, Gibson County, Indiana. The assessed valuation of Patoka Township property is $6,676,210, and the assessed value of the property within the present corporate limits of the city is $7,588,060. The assessed value of the area sought to be annexed is $871,685. There are three grade schools in the city and one parochial school, and there are two grade schools in the township. There is one high school in the city but none in the township outside the city. The school city of Princeton has a bonded indebtedness of $120,000 principal, "and has now accumulated in cash and government bonds the sum of $26,401.34, which reduces the bonded indebtedness to $93,598.66."

Residents of much of the area sought to be annexed, as well as of areas not sought to be annexed, use city water, for which they furnish their own lines at their

own cost and pay a higher rate than that paid by city users. The city fire department cooperates with the township fire department. Undeveloped areas in the city are either not desirable or not available. Building of homes is going on in parts of the areas sought to be annexed, particularly in platted portions. Property in such places has increased in value because of the proximity to the city. People in the areas sought to be annexed trade in the city and park their cars therein. There are parking meters around the central portion of the trading center. The city is a general social center.

Population of the city is decreasing. In some areas the city schools would be a greater distance for the children than the township schools, and in others the reverse is true. Township buses take children to the township schools, while the City does not provide this service.

While the bonded indebtedness of the school city appears by stipulation to be $93,598.66, there is evidence that it is $98,548.66, and that with the assessed valuation of the area proposed to be annexed a bonded indebtedness of $168,595.59 would be permissible. The civil city has a bonded indebtedness of $68,000 and on the sewage disposal has an indebtedness of $20,000.

Area "A," consisting of 61.4 acres is mostly agricultural or farm land with only one house and barn and associated farm buildings. The owner of a part of this tract testified that he thought he might some time sell ten or twelve acres for a subdivision, but not at farm land prices.

Approximately forty acres of the 66.9 acres in Area "B" are used for agricultural purposes. Most of the remaining part is platted and the platted area built up seventy percent by homes. A subdivision, covering six or eight acres, is being started. There are some con-

nections to city sewage in a part of the platted area, and there is sometimes an overflow of septic tanks.

Area "C," 152 acres, contains two platted subdivisions, but about half of the area is agricultural. Area "I" has 26.1 acres and about one house. Other areas contain rural land, along with land of an urban character.

As the general ordinance would draw the city boundaries, certain industrial areas are omitted, they being of a size, shape and location so that residents of Area "C" would not go into the downtown part of the city without passing outside the city and through territory not to be annexed, without following a most devious route. Appellants contend that this situation results in a situation where the lines of the annexation are so drawn as not to form a compact area abutting the municipality. In *People* v. *Thompson* (1895), 155 Ill. 451, 40 N. E. 307, 315, the court said:

". . . The word 'compact' has different meanings, as given by standard lexicographers, according to the subject in connection with which it is used. It is defined as meaning 'closely and firmly united, as the parts or particles of solid bodies; having the parts or particles pressed or packed together'; 'close'; 'solid'; 'dense'; 'as a compact mass of people.' Counsel for appellant contend that, so far as it can be applied to mere territorial surface, it means 'dense,' 'pressed together'; and they say: 'The districts are to be so formed that the territory shall be "pressed together," close, near to a common center; in no way so well expressed as by the word "compact." ' Not much fault can be found with this contention, *but, we are of the opinion that as used in the constitution and applicable to mere territorial surface, the word 'compact' means 'closely united,'* and that the provision that districts shall be formed of *contiguous and compact territory* means that the counties or subdivisions of counties (when counties may be divided), *when combined to form a district, must not only touch each other, but must be closely*

*united, territorially.* The requirement of contiguousness was contained in the constitution of 1848, and it was evidently the intention of the people, in adding the requirement of compactness in the constitution of 1870, to guard as far as practicable, under the system of representation adopted, against a legislative evil commonly known as the 'Gerrymander,' and to require the legislature to form districts not only contiguous, but of compact or closely-united territory."

As was said of a Virginia statute which required a reasonably compact body of land, in *County of Norfolk* v. *Portsmouth* (1947), 186 Va. 1032, 45 S. E. 2d 136:

"This brings us to the consideration of the provision of the statute that 'The court shall so draw the lines of annexation as to have a reasonably compact body of land.' What constitutes such a 'reasonably compact body' necessarily must depend upon the circumstances and conditions of each case. The word 'compact' as here used has no clear and precise meaning. A body of land which is not connected with or contiguous to a city boundary would, under most circumstances, be an isolated body, separate and distinct, not joined to the city and, therefore, ordinarily could not be said to be compact in relation to the city. On the other hand, it cannot be said that a compact body must have regular or symmetrical contours, or any particular characteristic or shape. . . ."

In view of the conclusions we have reached, we do not pass upon whether or not the determinant as to compactness has been demonstrated.

As to much of the area sought to be annexed, the evidence demonstrates the existence of primary determinants. The evidence also compels our conclusion, as it did that of the trial court, that a considerable part of the territory sought to be annexed is not urban in character within the meaning of our statute and is not needed for the development of the city within the reasonably near future; and that the annexation of por-

tions is not in the best interests of the city and of the territory sought to be annexed.

Having concluded, as we have, that the primary determinants cannot be demonstrated from the evidence as to a substantial portion of the territory  sought to be annexed, and that, considering the territory as a whole, the primary determinants cannot be demonstrated from the evidence, we must reverse the judgment. The situation revealed by the evidence is not one calling for the application of the principle of *de minimis non curat lex.*

Judgment reversed, with instructions to sustain appellants' motion for a new trial.

Kelley, C. J., Bowen, Cooper, Crumpacker, JJ., concur; Royse, P. J., not participating.

NOTE.—Reported in 146 N. E. 2d 422.