706

[No. 1097-1.    Division One—Panel 2.    October 30, 1972.]

MARIE HALVERSON, *as Guardian, Appellant,* v. DONALD ANDERSON *et al., Respondents and Cross-appellants.*

*Cushman, Thomas & Holt* and *R. M. Holt,* for appellant.

*Eberharter & Freedman* and *Robert Ward Freedman,* for respondents and cross-appellants.

FARRIS, A.C.J.—Plaintiff Marie Halverson, individually

and as guardian for her son, Dale A. Halverson, appeals from an order granting a new trial to the defendants Anderson. The Andersons cross-appeal from the order limiting the new trial to the issue of damages only.

Dale Halverson was injured when his automobile was struck from the rear by the Anderson automobile. The point of impact was in the immediate vicinity of a stop sign. The trial court after hearing testimony directed a verdict for the Halversons. The cause was submitted to the jury on the sole question of damages. The jury returned a verdict in the amount of $1,950 for Marie Halverson and $20,500 for Dale Halverson. Before entry of the judgment on that verdict, Anderson polled the jury. Affidavits of four jurors indicated that one juror had discussed a figure which he represented as wages paid to T.W.A. pilots and compared that figure to another figure which he represented as wages paid to civil surveyors.[1] Computations using these figures as well as an age for retirement (none of which was in evidence) resulted in a verdict figure of $100,000. The jury rejected this figure, but the affidavits all agree substantially with the process used to arrive at the verdict.

> The lost wages were arrived at, at the suggestion of Juror #5, Jack Schooley, who started shortly after we got into the jury room to arrive at a large amount. He stated that we could expect Mr. Halverson as an airline pilot, to retire at age 40. He further stated, and convinced us, that a T.W.A. pilot would earn $2,000.00 a month and a civil surveyor would earn $1,500.00 a month. Mr. Schooley at first stated that Mr. Halverson, in accordance with the Court's lost-wage instruction, would be entitled to at least $100,000.00. Eight people agreed, but would only award a percentage of the figures Mr. Schooley had suggested, upon his reasoning as to Mr. Halverson's projected earnings. Mr. Anderson, Juror #2 questioned the entire matter of assuming earnings of either pilots or surveyors and argued long and with some heat on occasions, that there was no evidence to support such an

---

[1]Evidence at trial indicated that Dale Halverson had wanted to become an airline pilot prior to the injury; that he was precluded from pursuing this occupation because of the injury; and that· he was studying to become a civil surveyor.

award. The debate, as I have indicated, was very heated between Mr. Anderson, Mr. Schooley and Mr. Merz, particularly.

We took several votes by a show of hands and also by ballot, to no avail. Finally it was decided that each juror would write a figure on a piece of paper, in an attempt to resolve our differences. The foreman then opened each individual paper, which had been placed on a table and mixed around, and read the amount and Mr. Schooley wrote it down. We went through this procedure several times until Mr. Merz announced that ten of us had arrived at the sum of $18,000.00. He then asked for a show of hands and eleven people raised their hands. Mr. Anderson protested the method of drawing figures in this manner and knocked on the door and the bailiff came. The foreman asked him if it was proper to take a secret ballot and the door shut immediately. The award to Mr. Halverson of $18,000.00 for future lost wages, $2,000.00 for future dental expenses, and $500.00 for pain and suffering, was reached at approximately 8:45 p.m. on Friday, October 23, 1970.

The trial court concluded that the procedure used to arrive at the verdict constituted misconduct and set aside the verdict to both Marie and Dale Halverson and granted a new trial on the issue of damages. Three of the affidavits substantially agree:

We had no problem in arriving at our decision to award Mrs. Halverson $1,400.00 for incurred medical and dental expenses, and her lost wages of $550.00.

The fourth contains no reference to that award. There is therefore no basis in the record for setting aside the verdict to Marie Halverson.

The question is whether the affidavits contain sufficient allegations of misconduct to support the setting aside of the verdict awarded to Dale Halverson.

■ The rule first announced in *State v. Parker*, 25 Wash. 405, 415, 65 P. 776 (1901) remains the rule in Washington.[2]

In considering the affidavits filed, we entirely discard

---

[2]See 38 Wash. L. Rev. 339 (1963) for a comment on the question.

those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict. It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors.

The policy favoring stable and certain verdicts and the necessity of maintaining the secrecy of deliberation and frank and free discussion by all jurors must yield (1) if the affidavit(s) of the juror(s) allege *facts* showing *misconduct,* and (2) those facts are sufficient to justify our making a determination that the misconduct affected the verdict. Any doubt on the latter point must be resolved in favor of granting a new trial. *See Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962).

■ We find that the matter before us is substantially the same as the question resolved by the Supreme Court in *State v. Gobin,* 73 Wn.2d 206, 210, 437 P.2d 389 (1968). There the jury considered testimony that it had heard in a prior case in arriving at its verdict. The court concluded:

[T]he affidavits set forth the considerations which entered into their deliberations and controlled their actions in arriving at the verdict. They could not be rebutted without probing the mental processes of the jurors. . . .

. . .

There is nothing in the affidavits filed in this case to show . . . any misconduct on the part of any juror, other than the misconduct of failing to follow the court's instructions and considering evidence dehors the record. It was the *consideration of other evidence* which constituted the misconduct and this cannot be shown by the affidavit of a juror.

While what happened here is not commendable, we do not find that it was misconduct as that term is defined by decisions of the Supreme Court. *See* 8 J. Wigmore, *Evi-*

*dence* § 2349 (J. McNaughton rev. ed. 1961). It was error to set aside the verdict on that ground.

■ We are urged by the cross-appeal to find that the trial court improperly granted a directed verdict:

> No discretion is involved in ruling on a motion for a directed verdict. The . . . court, . . . must interpret the evidence most strongly against [the moving party] and most favorably for [the nonmoving party], and draw every reasonable inference therefrom in favor of [the latter].

*Osborn v. Lake Washington School Dist. 414,* 1 Wn. App. 534, 535, 462 P.2d 966 (1969). Relying upon this rule, the Andersons argue that the record supports their position that the question of contributory negligence should have been submitted to the jury. She testified at trial:

> He was going fast, and then slow, fast and then slow. I was trying to approximate my speed to have at least two car lengths behind him at all times, but he was driving erratically. I did mention this to Louise. I asked, "Look at this guy, what's he doing?" We came up to the stop sign and he turned his left blinker on. There was a car coming down this off-ramp, and I said to Louise, "He can't go up there, that's an off-ramp."
>
> At that time he put on his brakes, and I remember him —the car was shaking. He just put on his brakes, wham, like this, and we went right into his back end. I couldn't help hitting him.

■ A following car is not ipso facto guilty of negligence when it strikes the rear of the lead car, but the primary duty is imposed upon the following driver. Where the rear-end collision occurs at a stop sign, a sudden stop by the lead car is to be anticipated as a matter of law. It is no excuse that the following car failed to see the stop sign.

We reverse the order granting a new trial and remand the cause for the entry of judgment on the verdict.

JAMES and SWANSON, JJ., concur.

Petition for rehearing denied December 29, 1972.

Review granted by Supreme Court February 21, 1973.