[No. 42680.   En Banc.   September 6, 1973.]

MARIE HALVERSON, *as Guardian, Respondent,* v. DONALD ANDERSON *et al., Petitioners.*

*Eberharter & Freedman,* by *Robert Ward Freedman,* for petitioners.

*Cushman, Thomas & Holt,* by *R. M. Holt,* for respondent.

ROSELLINI, J.—This is a personal injury action brought by the mother of a minor who was injured when the Volkswagen he was driving was struck from behind by the defendant's vehicle, when he stopped at a stop sign. The boy suffered head injuries, consisting of a broken jaw, a severe concussion, and the loss of several permanent teeth. He had recovered from these injuries at the time of trial.

The jury returned a verdict of $1,950 in favor of the plaintiff on her separate cause of action and $20,500 for the minor plaintiff. The defendants brought to the court's attention affidavits of four jurors, all of whom attested that, in the jury room, one of the jurors had stated that a TWA pilot would earn $2,000 per month and would retire at age 40, and that a civil surveyor would earn $1,500 per month.

These jurors also discussed the effect of this revelation upon their deliberations, stating that of the total sum awarded, $18,000 was for their projected estimate of future lost wages.

There was no evidence introduced pertaining to an alleged impairment of the minor's earning capacity. However, while the partial record before us does not show his testimony, the parties agree that he had an ambition to become an airline pilot. His application for medical clearance for a summer aviation job was rejected because of his history of concussion, although the medical examiner stated that his encephalograms were normal and that, in his opinion, he had completely recovered from the concussion. At the time of the trial, the boy was studying to become a civil surveyor. It appears that his evidence showed that he had lost wages at his job in a grocery store as a bag boy as well as the opportunity to apply for the summer aviation job.

The court had proposed to instruct the jury that it could include in its damage award

[t]he reasonable value of earnings lost and the present cash value of earning capacity reasonably certain to be lost in the future.

The defendants excepted to this instruction and called the court's attention to the fact that there was no evidence which would justify an award for impairment of earning capacity. The plaintiff's attorney stated that he had not attempted to introduce evidence about the earnings of airline pilots because he realized that the boy's prospective career in aviation was highly conjectural.[1]

The court granted the defendants' exception and deleted from the instruction that portion pertaining to earning capacity.[2]

The plaintiff's attorney was allowed to argue to the jury, however, that the loss of the opportunity to apply for aviation jobs was a part of the minor's general damages for which compensation should be given.

The court directed a verdict in favor of the plaintiff, and submitted to the jury the question of damages only.

Examining the affidavits of the jurors and recalling the testimony at the trial, the superior court found that one of the jurors had indeed introduced evidence not presented by the parties at the trial, which the defendants had no opportunity to rebut and the relevance of which they had no chance to argue. It held that this constituted jury miscon-

---

[1]Proof of impairment of earning capacity, particularly where an earning pattern has not been established, is not a simple undertaking. See S. Schreiber, *Damages in Personal Injury and Wrongful Death Cases,* at 28, 35, 319, 437, 447, 452, 474 and 507 (1965); S. Speiser, *Recovery for Wrongful Death,* chs. 3, 4, 8 and 9 (1966); Annot., *Proof of prospective earning capacity of student or trainee, or of its loss, in action for personal injury or death,* 15 A.L.R.2d 418 (1951), *also* Later Cas. Serv. 13-15 A.L.R.2d 395 (1973); P. Eden, *The Use of Economists and Statisticians in Impaired Earning Capacity Cases,* 10 The Practical Lawyer, vol. 3, at 23 (1964); H. Woods, *Earnings and Earning Capacity As Elements of Damage In Personal Injury Litigation;* 18 Ark. L. Rev. 304 (1964); C. McCormick, *Law of Damages* (Hornbook Series 1935).

[2]It is apparent that the jury understood that damages for lost future earnings were to be allowed. The instruction as given seems to be open to this construction but no clarifying instruction was requested, and error is not assigned to the giving of the instruction in this form.

duct. The court also expressed its awareness that it could not rightly consider the statements in the affidavits regarding the effect which the juror's statements had upon the jury's deliberations, but must make an independent determination as to whether this conduct probably affected the verdict. The conclusion of the court was that the statements probably did affect the verdict, and a new trial was granted.

The plaintiff appealed to the Court of Appeals, Division One, Panel 2, and the defendants took a cross-appeal based on the court's directed verdict and its refusal to instruct on their theory of contributory negligence.

The Court of Appeals reversed the order granting a new trial, finding that the issue before it was

> substantially the same as the question resolved by the Supreme Court in *State v. Gobin*, 73 Wn.2d 206, 210, 437 P.2d 389 (1968)

and concluding that the only misconduct of the jury was in considering evidence dehors the record. It affirmed the trial court on the issue of contributory negligence. *Halverson v. Anderson*, 7 Wn. App. 706, 502 P.2d 466 (1972). We granted the defendants' petition for review.

In reaching its decision the Court of Appeals recognized and cited certain applicable principles as follows:

> The rule first announced in *State v. Parker*, 25 Wash. 405, 415, 65 P. 776 (1901) remains the rule in Washington.[2]
>
> In considering the affidavits filed, we entirely discard those portions which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict. It is for the court to say whether the remarks made by the juror in this case probably had a prejudicial effect upon the minds of the other jurors.
>
> The policy favoring stable and certain verdicts and the necessity of maintaining the secrecy of deliberation and

frank and free discussion by all jurors must yield (1) if the affidavit(s) of the juror(s) allege *facts* showing *misconduct,* and (2) those facts are sufficient to justify our making a determination that the misconduct affected the verdict. Any doubt on the latter point must be resolved in favor of granting a new trial. *See Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962).

²*See* 38 Wash. L. Rev. 339 (1963) for a comment on the question.

7 Wn. App. at 708-09.

In the case last cited by the Court of Appeals, *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1963), we held that an unauthorized jury view of the scene of the accident in question, coupled with statements made about other possible lawsuits against the defendant, constituted misconduct which was sufficient to raise a reasonable doubt that the plaintiff was given a fair trial and to justify the granting of a new trial.

*State v. Gobin,* 73 Wn.2d 206, 437 P.2d 389 (1968), the case which the Court of Appeals found controlling, was a condemnation action, tried to a jury which had heard the evidence in a companion case, with no objection to this procedure being raised by the parties. After the verdict was returned, affidavits were obtained from jurors which showed that, in arriving at the amount of the award, they had considered evidence presented in the previous trial.

We said of these affidavits:

A more conspicuous case of the impeachment of a verdict by the affidavits of jurors would be difficult to imagine. As the order disclosed, the affidavits set forth the considerations which entered into their deliberations and controlled their actions in arriving at the verdict. They could not be rebutted without probing the mental processes of the jurors. Consequently they were improperly considered by the trial court in determining whether the respondent had a fair trial.

73 Wn.2d at 210-11.

We distinguished *Gardner v. Malone, supra,* and *State v. Parker,* 25 Wash. 405, 65 P. 776 (1901), in both of which, we noted, jurors had injected testimony or evidence outside

the record. In *Gardner* some members of the jury made an unauthorized visit to the accident scene and the one juror made statements in the jury room concerning other lawsuits; and in *Parker* a juror told the other jurors that he knew the defendant was guilty, that he was a member of a gang of toughs and was implicated in another killing.

We said in *State v. Gobin, supra* at 212:

> There was no conduct of that kind in this case. All of the jurors had been exposed to the evidence in the preceding condemnation action. There has been no suggestion that it was improper to try the two cases to the same jury. Since both parties consented to this procedure, both were apparently willing to undertake the risk that evidence heard by the jurors in the first trial might affect their deliberations in the second.

In *Lyberg v. Holz*, 145 Wash. 316, 259 P. 1087 (1927), one of the jurors stated to the others that the plaintiff had refused an offer of settlement for an ulterior purpose, and the injection of this "evidence" was held to be misconduct warranting a new trial. *See also State v. Burke*, 124 Wash. 632, 215 P. 31 (1923), *Woodruff v. Ewald*, 127 Wash. 61, 219 P. 851 (1923), and *Bouton-Perkins Lumber Co. v. Huston*, 81 Wash. 678, 143 P. 146 (1914), in each of which a new trial was found justified on a showing that jurors had taken evidence dehors the record.

It is apparent then that the Court of Appeals overlooked the distinction between this case and *Gobin*. In that case, no testimony was injected in the jury room by a juror. The previous trial was a common experience of all of the jurors, of which both parties to the action were aware, and to which they raised no objection. No misconduct of any juror was involved. Here, one juror stated to the other jurors certain matters of fact for which he vouched and which had not been introduced in the trial. His statement was an act capable of objective proof without probing the juror's mental processes. Any juror could testify to the fact of his making the statement, and another juror could deny that he made it, and it would then become a question of deciding which juror or jurors was worthy of belief.

Here, all of the jurors from whom affidavits were obtained told the same story. The trial court found them credible and it has not been suggested that had they been called to testify or had additional jurors been questioned, doubt would have been thrown upon the veracity of these affiants.

We conclude that the superior court correctly determined that the juror who supplied the jury with information concerning the earnings of airline pilots and civil surveyors was guilty of misconduct in placing before his fellow jurors evidence which was not subject to objection, cross-examination, explanation or rebuttal by the defendants.

The effect which this evidence may have had upon the jury was a question which was properly determined in the sound discretion of the trial court which had observed all the witnesses and the trial proceedings and had in mind the evidence which had been presented. If the trial court had any doubt that the misconduct affected the verdict, it was obliged to resolve that doubt in favor of granting a new trial. *Gardner v. Malone, supra; Lyberg v. Holz, supra.* The discretion of the trial court was properly exercised.

■ The plaintiff calls our attention to the fact that the misconduct could not have affected the verdict upon her separate cause of action, since it did not involve the minor's loss of earnings. There is merit in her contention that this phase of the action should not be retried. The trial court's order should be modified accordingly.

We have examined the defendants' further contention that the trial court erred in granting a directed verdict on the issue of liability. We find no error in the Court of Appeals' disposition on this aspect of the case. Its judgment in that regard is affirmed.

The decision of the Court of Appeals is reversed in part and the cause is remanded to the superior court for a new trial upon the issue of the damages suffered by the minor plaintiff.

HUNTER, HAMILTON, STAFFORD, UTTER, and BRACHTENBACH, JJ., concur.

HALE, C.J. (dissenting)—I doubt that any jury has ever deliberated upon its verdict entirely free of the kind of remarks and observations described in the court's opinion. To vacate a verdict because of them I think violates the sanctity of the jury room and contrary to long-standing principles permits the jury to impeach its own verdict. Setting aside this verdict on the stated grounds erects new barriers to finality of verdict and judgment in a judicial system already overburdened with superfluous procedural machinery.

The Court of Appeals, I think, decided this case correctly on the basis that the issue before it was

> substantially the same as the question resolved by the Supreme Court in *State v. Gobin*, 73 Wn.2d 206, 210, 437 P.2d 389 (1968)

and I would accordingly affirm that court's decision.

FINLEY and WRIGHT, JJ., concur with HALE, C.J.